1 | JOEL D. SIEGEL (Bar No. 155581)
joel.siegel@dentons.com
2 | DENTONS US LLP
601 South Figueroa Street, Suite 2500
3 | Los Angeles, California 90017-5704
Tel: (213) 623-9300 / Fax: (213) 623-9924
4 |
5 | STEPHANIE S. ABRUTYN (*pro hac vice*)
stephanie.abrutyn@dentons.com
6 | DENTONS US LLP
1900 K Street NW
7 | Washington, DC 20006
Tel: (202) 496-7649 / Fax: (202) 496-7756
8 | *Attorneys for Defendants*
9 | *The Walt Disney Company and*
*Disney Enterprises, Inc.*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE LAWSON, an individual, | Case No. 8:25-cv-00889-JVS-ADS |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| THE WALT DISNEY COMPANY, a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; and DOES 1-5, | Judge: James V. Selna
Hearing Date: September 29, 2025
Time: 1:30 p.m.
Courtroom: 10C
Date Action Filed: April 30, 2025 |
| Defendants. | |

**TO THE ABOVE-ENTITLED COURT AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 29, 2025, at 1:30 p.m., or as soon thereafter as this matter may be heard, before the Honorable James V. Selna, Defendants The Walt Disney Company and Disney Enterprises, Inc. (collectively, "Defendants") will and hereby do respectfully move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for dismissal of Plaintiff Danielle Lawson's ("Plaintiff") First Amended Complaint in its entirety without leave to amend.

This Motion is made on the following grounds, as explained more fully in the accompanying Memorandum of Points and Authorities and supporting papers. Defendants seek dismissal of both counts: (1) copyright infringement, 17 U.S.C. § 101 *et seq.*, and (2) violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(b).

First, Plaintiff's copyright infringement claim is based on a basic misunderstanding of the law. The First Amended Complaint fails to state a claim for copyright infringement for the following reasons:

- The works on which Plaintiff's claim is based are unauthorized derivative works of material *owned by Defendants*.

- Plaintiff's copyright protection, if any, is thin and her claim fails because Defendants' image is not a verbatim reproduction of Plaintiff's work.

- Plaintiff's claim fails the substantial similarity test because there are so few protectable elements owned by Plaintiff, and so many differences between the works once Defendants' preexisting intellectual property is filtered out, that it cannot satisfy the extrinsic prong of that test.

Second, there can be no DMCA violation when Defendants did not copy or distribute Plaintiff's work. The First Amended Complaint also does not plausibly

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  allege that Defendants' image is identical to support a Section 1202(b)(1) or (b)(3)
2  violation, or that Defendants acted with the requisite scienter.

3      Because Plaintiff cannot cure these deficiencies by further amendment, and she
4  has already attempted to do so once, the Court should dismiss the First Amended
5  Complaint without leave to amend.

6      This Motion is based on the attached Memorandum of Points and Authorities,
7  the accompanying Declaration of Stephanie S. Abrutyn and the exhibits thereto, the
8  First Amended Complaint (ECF No. 25), the accompanying Request for Judicial
9  Notice, and on such oral argument of counsel, testimony, and documentary evidence
10 as may be presented at a hearing on this Motion.

11     Accordingly, Defendants respectfully request that this Court grant the Motion
12 and dismiss the First Amended Complaint in its entirety with prejudice.

13 Dated: August 28, 2025                    Respectfully submitted,

14                                           DENTONS US LLP

15

16                                           By:  /s/ Stephanie S. Abrutyn
17                                               Joel D. Siegel
                                                 Stephanie S. Abrutyn (*pro hac vice*)
18                                           *Attorneys for Defendants The Walt Disney*
19                                           *Company and Disney Enterprises, Inc.*

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................. 8

II.     FACTUAL BACKGROUND ............................................................... 9

        A.      Disney Intellectual Property ..................................................... 9

        B.      Plaintiff's Drawings ................................................................ 11

III.    LEGAL STANDARD ........................................................................ 14

IV.     ARGUMENT ..................................................................................... 15

        A.      The Copyright Infringement Claim Must Be Dismissed. ................. 16

                1.      Plaintiff's Copyright Is Thin. ........................................ 18

                2.      As a Matter of Law, Defendants Did Not Unlawfully
                        Appropriate Protected Elements Owned by Plaintiff. ............. 20

                        a.      Plaintiff's Copyright Claim Fails the Virtual Identity
                                Test. ................................................................ 25

                        b.      Plaintiff's Claim Fails the Substantial Similarity Test ... 26

                3.      The First Amended Complaint Fails to Sufficiently Allege
                        Copying ...................................................................... 28

        B.      The First Amended Complaint Does Not State a Claim for Violation
                of the DMCA ........................................................................... 30

        C.      Dismissal Should Be Without Leave to Amend. ............................. 33

V.      CONCLUSION ................................................................................. 33

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A'Lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*,
No. CV 12-02215-RGK, 2012 WL 12921035 (C.D. Cal. Aug. 8, 2012) .......... 27

*Apple Computer, Inc. v. Microsoft Corp.*,
35 F.3d 1435 (9th Cir. 1994) ........................................................................ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................. 7, 8, 22, 25

*Basile v. Warner Bros. Entm't, Inc.*,
No. CV 15-5243-DMG, 2016 WL 5867432 (C.D. Cal. Jan. 4, 2016) .......... 26–27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................... 7, 8, 25

*Burrow-Giles Lithographic Co. v. Sarony*,
111 U.S. 53 (1884) ...................................................................................... 13

*Capcom U.S.A., Inc. v. Data E. Corp.*,
No. C 93-3259 WHO, 1994 WL 1751482 (N.D. Cal. Mar. 16, 1994) .............. 19

*Corwin v. Walt Disney World Co.*,
No. 6:02-cv-1377-Orl-19KRS, 2005 WL 8165579 (M.D. Fla. Apr. 28, 2005).. 13

*Doe 1 v. GitHub, Inc.*,
672 F. Supp. 3d 837 (N.D. Cal. 2023)........................................................... 24

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
No. 2:22-cv-01463-RGK-MAA,
2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ................................................ 25

*Esplanade Prods., Inc. v. Walt Disney Co.*
No. CV 17-02185-MWF, 2017 WL 5635027 (C.D. Cal. Nov. 8, 2017) 10–11, 14

*Ets-Hokin v. Skyy Spirits, Inc.*,
323 F.3d 763 (9th Cir. 2003) .................................................................. 10, 19

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ...................................................................................... 9, 12

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*Fisher v. Nissel*,
No. CV 21-5839-CBM-(KSx),
2022 WL 16961479 (C.D. Cal. Aug. 15, 2022) ..................................................... 7

*Folkens v. Wyland Worldwide, LLC*,
882 F.3d 768 (9th Cir. 2018) ............................................................................... 12

*Kelly v. Univ. Press of Mississippi*,
No. CV 16-2960 PA, 2016 WL 4445986 (C.D. Cal. Aug. 16, 2016) ................. 13

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
No. CV 20-1931-DMG, 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ...... 24–25

*Klauber Bros., Inc. v. City Chic Collective Ltd.*,
No. 22-1743-MWF, 2022 WL 17184799 (C.D. Cal. Aug. 26, 2022) ................. 23

*Milkcrate Athletics, Inc. v. Adidas Am., Inc.*,
619 F. Supp. 3d 1009 (C.D. Cal. 2022) .............................................................. 19

*Milkcrate Athletics Inc. v. Adidas Am., Inc.*,
No. 2:21-cv-09328-FWS-JPR,
2022 WL 18284401 (C.D. Cal. Nov. 9, 2022) ......................................... 9, 12, 14

*Mills v. Netflix, Inc.*,
No. CV 19-7618-CBM-(AGRx), 2020 WL 548558 (C.D. Cal. Feb. 3, 2020) ... 26

*Morgan v. Associated Press*,
No. 15-03341-CBM-JEM, 2016 WL 6953433 (C.D. Cal. Mar. 16, 2016) ......... 24

*O'Neal v. Sideshow, Inc.*,
583 F. Supp. 3d 1282 (C.D. Cal. 2022) ......................................................... 24, 26

*Peter T. Erdelyi & Assocs. v. Optimum Seismic, Inc.*,
No. 2:20-cv-11066-JVS-GJSx, 2021 WL 4775635 (C.D. Cal. July 1, 2021) ..... 26

*Philpot v. Alternet Media, Inc.*,
No. 18-CV-04479-TSH, 2018 WL 6267876 (N.D. Cal. Nov. 30, 2018) ...... 25–26

*Rentmeester v. Nike, Inc.*,
883 F.3d 1111 (9th Cir. 2018) ...................................................................*passim*

*Satava v. Lowry*,
323 F.3d 805 (9th Cir. 2003) ......................................................................... 10, 12

*Sega Enters. Ltd. v. Accolade, Inc.*,
977 F.2d 1510 (9th Cir. 1992) ............................................................................ 12

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*Sobhani v. @Radical.Media Inc.*,
    257 F. Supp. 2d 1234 (C.D. Cal. 2003)........................................................ 12, 13

*Star Fabrics, Inc. v. Wet Seal, Inc.*,
    No. CV 14–07163 BRO, 2014 WL 12591271 (C.D. Cal. Dec. 2, 2014)............ 23

*Stevens v. Corelogic, Inc.*,
    899 F.3d 666 (9th Cir. 2018) ......................................................................... 25, 26

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
    24 F.3d 1088 (9th Cir. 1994) ................................................................................ 13

*Sybersound Recs., Inc. v. Apollo Glob. Mgmt.*,
    No. 2:23-CV-09750-FLA, 2024 WL 5284992 (C.D. Cal. Dec. 2, 2024) ... 7–8, 25

*Woodland v. Hill*,
    136 F.4th 1199 (9th Cir. 2025)..................................................................*passim*

**Statutes**

17 U.S.C. § 101 ...................................................................................................... 6

17 U.S.C. § 102 .............................................................................................. 12, 13

17 U.S.C. § 103 .............................................................................................. 12, 14

17 U.S.C. § 1202 ..................................................................................... 6, 8, 24, 25

**Rules and Regulations**

Fed. R. Civ. P. 8...................................................................................................... 24

Fed. R. Civ. P. 12.................................................................................................... 7

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Nearly a decade after using Defendants' well-known intellectual property in a student project without consent, Plaintiff now seeks to base a copyright infringement claim on her unauthorized derivative work. This lawsuit—and Plaintiff's second attempt at pleading—is a misuse of copyright law and should be dismissed at the outset.

Beginning with the first "The Lion King" motion picture, for more than three decades, defendants The Walt Disney Company and Disney Enterprises, Inc. (collectively, "Disney" or "Defendants") have developed, fostered, and owned a myriad of copyright and trademark registrations covering the intellectual property that makes up the iconic "The Lion King" universe (collectively the "Lion King IP"). *See* Declaration of Stephanie S. Abrutyn, dated August 28, 2025 ("Abrutyn Decl."), Exs. D–H.[1] Plaintiff took the Lion King IP without authorization and used it in a student project, consisting of a group of drawings and related images (collectively, the "Drawings") depicting a Lion King-themed roller coaster. Plaintiff then applied for a copyright registration for her project, disclaiming "Pride Rock and characters from Disneys [sic] Lion King." *Id.* Exs. A, C. The application passed through to registration—although the Copyright Office should have rejected it because Plaintiff's work is an unauthorized derivative work, it infringes on Disney's intellectual property, and it otherwise lacks sufficient originality and creativity.

Nearly ten years later, after Defendants released a promotional image for a planned Lion King theme park attraction at Disneyland Paris, Plaintiff attempted to use the copyright registration for her unauthorized Drawings to force Defendants to give her a "working opportunit[y]" or face a lawsuit. ECF No. 25 ("First Amended

---

[1] The Court may take judicial notice of records of the U.S. Copyright Office and U.S. Patent and Trademark Office. *See* Defendants' Request for Judicial Notice at 4.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Complaint" or "FAC") ¶ 32.[2] When Defendants declined, Plaintiff filed this action for copyright infringement and removal of copyright management information ("CMI").

The First Amended Complaint is Plaintiff's second bite at the apple. She amended her initial complaint following a "meet and confer," during which Defendants' counsel identified numerous deficiencies in her claims. Plaintiff's second attempt fails to cure these fatal deficiencies. Put simply, the lack of any similarity between Plaintiff's work and Defendants' work at issue (other than intellectual property owned by Defendants) is evident on the face of the First Amended Complaint and it should be dismissed with prejudice because it fails to state a claim.

## II.    FACTUAL BACKGROUND

### A.    Disney Intellectual Property

Disney obtained a copyright in the original "The Lion King" animated film more than 30 years ago. *See* Abrutyn Decl. Ex. D. Since then, Disney has continued to exploit the property, expanding its scope and reach, and creating a wide variety of derivative and new works, including a 2019 live action film and seven theme park live adaptations. *See id.* Exs. E, F. Today, Disney holds hundreds of United States copyright registrations covering Lion King IP, including the pinnacle Pride Rock location and "The Lion King" characters Simba, Scar, and Zazu. *See id.* Ex. F. By May 2015, when Plaintiff obtained her copyright registration, Disney owned more than 350 U.S. copyright registrations covering various iterations of "The Lion King." *See id.* Disney also owns 12 U.S. trademark registrations relating to "The Lion King." *See id.* Ex. H. Put simply, "The Lion King" is one of the most well-known and admired Disney properties.

Disney also has a long history of operating theme parks that feature attractions and characters from existing Disney intellectual property, including Disney films. *See* Defendants' Request for Judicial Notice at 5, Exs. 1–6. Examples include: "101 Dalmatians," "Avatar," "Avengers," "Cars," "Dumbo," "Finding Nemo," "Frozen,"

---

[2] The First Amended Complaint is attached to this Memorandum of Points and Authorities.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

"Guardians of the Galaxy," "Maleficent," "Peter Pan," "Pirates of the Caribbean," "Ratatouille," "Star Wars," "The Little Mermaid," "The Princess and the Frog," "Tomorrowland," "Toy Story," and "TRON." *See* Defendants' Request for Judicial Notice Exs. 1–6.[3] Disney similarly debuted a log flume ride in its Splash Mountain attraction, which was based on a 1946 Disney film and is itself covered by numerous copyright registrations (collectively, the "Splash Mountain IP"). *See* Abrutyn Decl. Ex. I.

Disney theme parks also are filled with other intellectual property, including the well-known 3 Circle Device Logo and a hat with the silhouette "Mouse Ears" (the "Mickey IP"). *See id.* Ex. J. The Mickey IP is owned exclusively by Disney and is the subject of trademark rights in the United States. *See id.* For decades, Disney has used the Mickey IP on a variety of consumer products. *See id.* "Animal Kingdom" is a theme park located inside the "Walt Disney World" resort in Florida. *See* Defendants' Request for Judicial Notice Ex. 6. Disney owns copyright and trademark registrations for both "Animal Kingdom" and "Walt Disney World" (both together with the Lion King IP, the Mickey IP, and the Splash Mountain IP, the "Disney IP"). *See id.* Exs. K, L.

On August 10, 2024, Disney announced at a fan event organized by D23, the official Disney fan club, that a future immersive "The Lion King" theme park experience and attraction would be coming to Disneyland Paris. *See* FAC ¶¶ 23–24. The attraction is not yet constructed and will be located outside the United States. *See* FAC ¶¶ 23–24. In connection with this announcement, Disney released an image that was, on its face, a derivative work based on a single frame of the 2019 "The Lion King" film (the "D23 Image"):

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

---

[3] The Court may take judicial notice of these facts. *See* Defendants' Request for Judicial Notice at 5, Exs. 1–6.



*See* FAC ¶¶ 23–24; Abrutyn Decl. ¶ 9, Ex. E. The D23 Image is the only Disney work referenced or identified in the First Amended Complaint, and therefore the sole basis of the claims pled. *See* FAC ¶¶ 23–24.

### B.    Plaintiff's Drawings

According to the First Amended Complaint, Plaintiff created her unauthorized derivative work as a student project while in college. *See* FAC ¶ 43. Her ambition was to secure a future job at Disney. *See* FAC ¶ 43. During this time, a Disney executive named Will Martinez generously gave his time to mentor and offer advice to Plaintiff. *See* FAC ¶ 43. Notably, the First Amended Complaint does not allege that Martinez had anything to do with the D23 Image, nor that Plaintiff ever showed Martinez all of the specific drawings that she registered for copyright protection. *See* FAC ¶ 43. Although the First Amended Complaint also mentions two other Disney employees "Dave Durham (Disney Imagineer Director)" and "Michel Den Dulk (Portfolio Creative Director for Disneyland Paris)," it also does not allege that either of them had involvement in creating the D23 Image, nor that Plaintiff ever met or provided her Drawings to either of them. *See id.* ¶¶ 42–45.

According to the First Amended Complaint, as of May 11, 2015, the Copyright Office granted Plaintiff a copyright registration bearing Registration No. VAu001211793 for a work entitled "Pride Rock Plunge" (the "Registration"), consisting of eleven Drawings ("Plaintiff's Registered Work") (which are labeled herein for ease of reference):

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Drawing 1 

 Drawing 2

Drawing 3 

 Drawing 4

Drawing 5 

 Drawing 6

Drawing 7 

 Drawing 8

Drawing 9 

 Drawing 10

Drawing 11 

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*See* FAC ¶ 15.[4] The First Amended Complaint accurately concedes that Plaintiff disclaimed the Lion King IP from the Registration, including "Pride Rock" and "characters from [] Lion King." FAC ¶ 17. Neither the Registration nor the First Amended Complaint make any mention of Disney's preexisting rights in the Mickey IP, Splash Mountain IP, Animal Kingdom, Walt Disney World, or in connection with any other theme park attraction. *See generally* FAC; Abrutyn Decl. Exs. A, C.

The First Amended Complaint describes the Registered Work as a "registered collective work," FAC ¶ 16, but the Registration does not identify the Registered Work as a collective work, instead indicating that the Registration covers "2-D artwork, sculpture." *See* Abrutyn Decl. Exs. A, C. The First Amended Complaint also describes Plaintiff's Registered Work as the "Lawson Attraction," claiming that it covers a host of elements not present in the Registered Work. FAC ¶¶ 15–16; *see* Abrutyn Decl. Exs. A–C. They include "[t]hrill ride sequence and pacing," "[s]cripted sequences and story elements," "[e]motional journey shown through rhythmic color/light shifts," "[a]udio animatronics and special effects," "[l]ighting and special effects," and "[t]hematic storytelling." FAC ¶ 16; *see* Abrutyn Decl. Exs. A–C.

After Defendants announced the planned Lion King attraction, on November 1, 2024, Plaintiff contacted Defendants, raised alleged infringement of her student project, and offered to resolve her claim in exchange for "potential working opportunities" and compensation for "her valuable design work." FAC ¶ 32. Defendants rejected this proposal. *See* FAC ¶ 33. Apparently, because Plaintiff never secured her desired job at Disney, *see* FAC ¶¶ 32–33, 43–44, she chose to pursue copyright claims based on the D23 Image. *See* FAC ¶¶ 23–24, 26–27, 47–58, 60–68.

Plaintiff commenced this action on April 30, 2025, filing a complaint asserting two claims: (1) copyright infringement, 17 U.S.C. § 101 *et seq.*, and (2) violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(b). *See generally* ECF No. 1. Plaintiff later amended her pleading after Defendants' counsel identified

---

[4] The certified deposit copy contains sixteen drawings and images, five of which are duplicates. *See* Abrutyn Decl. Ex. B.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

numerous deficiencies during a meet a confer. *See* FAC; ECF No. 20 ¶ 2. The First Amended Complaint contains only a few minimal amendments, primarily to align the images in the pleading to Plaintiff's deposit copy. *See* FAC ¶¶ 15–16, 26, 62, 64–66.

Specifically, the First Amended Complaint alleges that the D23 Image infringes on her copyright in the Drawings. *See* FAC ¶¶ 15, 23–24, 26–27. Although the First Amended Complaint alleges that there are "clear and distinct similarities" between Plaintiff's Drawings and Defendants' D23 Image, it does not actually identify what those similarities are. FAC ¶ 25. In particular, it does not identify which of Plaintiff's Drawings contain the alleged similarities, nor what in the D23 Image is similar to anything *owned by Plaintiff*, as opposed to the disclaimed Lion King IP owned by Disney (or other Disney IP). *See* FAC ¶¶ 15, 25, 42, 45, 50. Plaintiff's allegations of removal of CMI focus on the alleged removal of "Plaintiff's name, signature and identifying information," prior to alleged republication of her work in the D23 Image. FAC ¶ 64.

### III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Legal conclusions "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A court may consider the allegations contained in the pleadings, exhibits attached to or referenced in the complaint, and matters properly subject to judicial notice in ruling on a motion to dismiss." *Fisher v. Nissel*, No. CV 21-5839-CBM-(KSx), 2022 WL 16961479, at *2 (C.D. Cal. Aug. 15, 2022) (citation omitted). Significantly, "[t]he court need not accept as true allegations that contradict matters properly subject to judicial notice or established by exhibits attached to the complaint." *Sybersound Recs., Inc. v. Apollo*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*Glob. Mgmt.*, No. 2:23-CV-09750-FLA (JPRX), 2024 WL 5284992, at *2 (C.D. Cal. Dec. 2, 2024) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

## IV. ARGUMENT

The First Amended Complaint fails to state a plausible claim for copyright infringement or violation of the DMCA for removal of CMI.

The First Amended Complaint depicts and bases a copyright infringement claim on eleven Drawings of a tiered, Lion King-themed roller coaster, allegedly created by Plaintiff. A close inspection of Plaintiff's works reveals that her Drawings are filled with either Disney's preexisting works (some of which Plaintiff expressly disclaims) or unprotectable elements. Comparing what is left in each of the Drawings after removal of the Disney IP to Defendants' D23 Image, the differences are stark. The First Amended Complaint relies heavily on conclusory allegations of copying, identicality, and substantial similarities that do not meet the *Iqbal/Twombly* threshold for stating a claim—the copyright claim passes neither the virtual identity test, which courts apply in cases of thin copyright, nor the Ninth's Circuit's substantial similarity test. The allegations of access and copying also are threadbare and conclusory, which separately mandates dismissal of Plaintiff's copyright infringement claim.

The First Amended Complaint's allegations of removal of CMI are similarly lacking, as they rest on a bare and unsupportable allegation of copying. The First Amended Complaint also does not allege which sub-section of 17 U.S.C. § 1202(b) Defendants allegedly violated, that the works are identical to support a violation, or that Defendants acted with the requisite mental state.

In the face of these fatal deficiencies, and because there are no allegations that Plaintiff could possibly add to cure the deficiencies, after Plaintiff already amended her pleading once, the Court should dismiss the First Amended Complaint without leave to amend.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### A.    The Copyright Infringement Claim Must Be Dismissed.

Plaintiff's First Amended Complaint does not state a colorable claim for copyright infringement. To overcome a motion to dismiss, the First Amended Complaint must plausibly allege two things: (1) that Plaintiff owns a valid copyright in her Drawings, and (2) that Defendants copied protected aspects of the Drawings' expression covered by Plaintiff's copyright. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Assuming that Plaintiff owns a valid copyright—which is questionable at best given the breadth and significance of the Disney IP in her work—the Court must identify the applicable test for the second prong of the analysis, and then analyze the two works to ascertain if they meet that test, as the Ninth Circuit did in *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117–23 (9th Cir. 2018). The Ninth Circuit bifurcates the second prong into two components: "copying" and "unlawful appropriation." *Woodland v. Hill*, 136 F.4th 1199, 1206 (9th Cir. 2025). Plaintiff must show copying either by direct evidence, or "by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Rentmeester*, 883 F.3d at 1117. Thereafter, Plaintiff must show "unlawful appropriation," generally meaning that Defendants "copied enough of the protected expression in the work to render the two works substantially similar." *Woodland*, 136 F.4th at 1206 (quotation marks and citation omitted).

Where there is only a narrow range of unique expression contributed by Plaintiff, the copyright is "thin." *Milcrate Athletics Inc. v. Adidas Am., Inc.*, No. 2:21-cv-09328-FWS-JPR, 2022 WL 18284401, at *5 (C.D. Cal. Nov. 9, 2022) (quoting *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1260 (9th Cir. 2021)) In cases of works that have narrow or "thin" copyright protection, as some of the Drawings here, the Ninth Circuit applies the virtual identity standard. *See, e.g.*, *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava possesses a thin copyright that protects against only virtually identical copying."); *Ets-Hokin v. Skyy Spirits, Inc.*,

323 F.3d 763, 766 (9th Cir. 2003) ("When we apply the limiting doctrines, subtracting the unoriginal elements, Ets–Hokin is left with only a "thin" copyright, which protects against only virtually identical copying."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity.").

For works entitled to broad copyright protection, courts apply the substantial similarity standard, which in the Ninth Circuit mandates that a plaintiff satisfy a further two-part test: (1) the extrinsic test "compares objective similarities in protectable expression," and (2) the intrinsic test "evaluates similarity from the point of view of a reasonable observer." *Woodland*, 136 F.4th at 1210 (citation omitted). Under the extrinsic test, as applied at the motion to dismiss stage, the Court focuses "only on the protectable elements of the plaintiff's expression," which requires the Court to first "'filter out' the unprotectable elements of the plaintiff's work." *Rentmeester*, 883 F.3d at 1118 (citation omitted). The Court must then compare the remaining protectable elements owned by Plaintiff to the "corresponding elements of the defendant's work to assess similarities in the objective details of the works." *Id.* "The intrinsic test requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in 'total concept and feel.'" *Id.* (citation omitted). Plaintiff must satisfy both tests to establish substantial similarity. *Id.* Failure to meet the extrinsic test alone is fatal. *See Woodland*, 136 F.4th at 1210.

Because the Court has both Plaintiff's and Defendants' works before it, the Court can and should apply the applicable test on this motion to dismiss. *See Rentmeester*, 883 F.3d at 1117–23; *Esplanade Prods., Inc. v. Walt Disney Co.*, No. CV 17-02185-MWF (JCx), 2017 WL 5635027, at *8 (C.D. Cal. Nov. 8, 2017) ("[T]here is no logical reason to delay the inevitable when the Court already has the allegedly infringed and infringing works before it on a motion to dismiss."), *aff'd*, 768 F. App'x 732 (9th Cir. 2019). Regardless of which test is applied, each of the Drawings fails and the First Amended Complaint therefore should be dismissed.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### 1.      Plaintiff's Copyright Is Thin.

The majority of Plaintiff's Drawings are dominated by Disney IP, including Pride Rock and protected characters from "The Lion King" that are disclaimed in Plaintiff's Registration. *See* FAC ¶¶ 15, 17; Abrutyn Decl. Exs. A–C. Specifically:

- Drawings 1, 2, and 3 include illustrations of protected characters from "The Lion King"—a lion and its cub in Drawing 1, Zazu in Drawing 2, and Scar and the Hyenas in Drawing 3. *See* FAC ¶ 15; Abrutyn Decl. Exs. B, D–F, H.

- Drawings 4 and 5 depict other protected characters from "The Lion King": Simba and Nala, as the front and back of roller coaster carts, and Scar and the Hyenas. *See* FAC ¶ 15; Abrutyn Decl. Exs. B, D–F, H.

- Drawing 5 shows a child wearing Mickey Mouse ears, which also is Disney IP. *See* FAC ¶ 15; Abrutyn Decl. Exs. B, J.

- Drawings 8 and 9 depict the character Simba from "The Lion King" as the face and body of a design for a roller coaster cart. *See* FAC ¶ 15; Abrutyn Decl. Exs. B, D–H.[5]

- Drawings 10 and 11 both reference "Pride Rock," which is the pinnacle location in "The Lion King." *See* FAC ¶ 15; Abrutyn Decl. Exs. B, D–F, H.

- Drawing 11 shows Pride Rock in the background, and contains several characters from "The Lion King" in the mid-ground and another character, Simba, as the face of the cart depicted in the foreground. *See* FAC ¶ 15; Abrutyn Decl. Exs. B, D–H.

- Drawing 11 contains references to "Animal Kingdom" and "Walt Disney World," including the stylized design that is covered by Disney's copyright and trademark registrations. *See* FAC ¶ 15; Abrutyn Decl. Exs. K, L.

As "copyright protection does not extend 'to derivative works if the pre-existing work *tends to pervade* the entire derivative work,'" Plaintiff should not have been able to obtain a registration for the Drawings. *Sobhani v. @Radical.Media Inc.*, 257 F. Supp. 2d 1234, 1239–40 (C.D. Cal. 2003) (quoting 1 Nimmer on Copyright § 3.06 (1986)). Copyright protects only "unique expression." *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 776 (9th Cir. 2018) ("The basic idea of copyright law is to protect unique expression, and thereby to encourage expression."); *see Feist*, 499 U.S. at 348

---

[5] The individual carts in Plaintiff's Drawings bear a remarkable resemblance to a children's toy that is the subject of a preexisting Disney copyright for a work entitled "Disney Baby Lifestyle 3." Abrutyn Decl. ¶ 11, Ex. G.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    ("Originality remains the *sine qua non* of copyright.").

2        Even with a registration, copyright protection does not extend to "elements

3    borrowed from another creator or from the 'public domain.'" *Milkcrate*, 2022 WL

4    18284401, at *5 (citation omitted); *see* 17 U.S.C. § 102(b). As a result, to apply the

5    relevant standards to determine if Plaintiff's claim can survive a motion to dismiss,

6    the Court must consider only the Drawings *without the Disney IP*. *See* 17 U.S.C.

7    § 103(b) ("The copyright in a ... derivative work extends only to the material

8    contributed by the author of such work, as distinguished from the preexisting material

9    employed in the work, and does not imply any exclusive right in the preexisting

10   material.").

11       Additionally, even if they were present in the D23 Image, which they are not,

12   the parts of the Drawings that are merely functional design components of a roller

13   coaster are not entitled to copyright protection. *See* 17 U.S.C. § 102(b); *Sega Enters.*

14   *Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992) (the "protection

15   established by the Copyright Act for original works of authorship does not extend to

16   … functional or factual aspects of the work"). Nor are "[e]xpressions that are

17   standard, stock, or common to a particular subject matter or medium," known as

18   scènes à faire, "protectable under copyright law." *Satava*, 323 F.3d at 810. Several of

19   the Drawings contain these and other unprotectable elements, *see* FAC ¶ 15, which

20   must be discounted in assessing whether Plaintiff has stated a claim for infringement.

21       To the extent that Plaintiff is seeking to claim ownership over the idea of a Lion

22   King roller coaster theme park attraction called "Pride Rock Plunge," that idea also is

23   not protectable. *See* 17 U.S.C. § 102(b). The First Amended Complaint refers to

24   Plaintiff's Drawings as the "Lawson Attraction," carrying this defined term forward

25   throughout the entirety of the pleading in an apparent attempt to extend Plaintiff's

26   Registration in the visual material to an idea for a theme park ride. *See* FAC ¶ 15.[6]

27   This overreach is contrary to settled copyright law. It is axiomatic that an artist's

28   _____

[6] Plaintiff's Registration is not so bold. It classifies the Registered Work as "2-D artwork, sculpture," not a theme park attraction. *See* Abrutyn Decl. Exs. A, C.

*expression* of an idea may be protected—but not the idea itself nor the subject matter of the work. *See Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60 (1884). Just as, "a copyright on a painting does not give rise to a cause of action for the construction of the idea embodied in the painting," Plaintiff cannot register a group of drawings of a Lion King roller coaster and other images containing Disney IP and then turn around and maintain a lawsuit against Disney for planning and promoting a Lion King theme park attraction containing the Disney IP that Plaintiff used without permission (and disclaimed from her Registration). *Corwin v. Walt Disney World Co.*, No. 6:02-cv-1377-Orl-19KRS, 2005 WL 8165579, at *8 (M.D. Fla. Apr. 28, 2005) (rejecting claim that plaintiff's "copyright on his painting gives him the right to preclude the building of an international theme park" containing ideas depicted in the painting); *see also Sobhani*, 257 F. Supp. 2d at 1240 (because the preexisting "copyrighted work pervades the derivative work, and because Plaintiff used the previous work without authorization, no copyright protection is afforded"). Yet, that is exactly what she is trying to do here.[7]

Plaintiff's use of preexisting Disney IP, stock elements, and functional features leaves only a narrow range of unique expression contributed by Plaintiff, which renders her copyright in most of these Drawings "thin," entitling them to minimal protection. *See Milkcrate*, 2022 WL 18284401, at *5. That Plaintiff may be able to claim limited protection for certain basic elements, such as the pencil technique used in the Drawings, the limited textual explanations, and any unique selection and arrangement of scenic elements, does not override the fact that the dominant element of the Registered Work is Disney IP.

### 2.  As a Matter of Law, Defendants Did Not Unlawfully Appropriate Protected Elements Owned by Plaintiff.

---

[7] Moreover, to the extent that Plaintiff is seeking to assert a claim based on Disney's planned attraction in France, this claim is unripe, and extraterritorial conduct is outside the scope of the Copyright Act. *See Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1095 (9th Cir. 1994); *Kelly v. Univ. Press of Mississippi*, No. CV 16-2960 PA (GJSx), 2016 WL 4445986, at *4 (C.D. Cal. Aug. 16, 2016).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

The First Amended Complaint is fatally flawed because it fails to plausibly allege that Defendants copied protected aspects of the Drawings' expression that is owned by Plaintiff. Given the facts here, the Court can and should decide this issue on a motion to dismiss. *See Rentmeester*, 883 F.3d at 1117–23; *Esplanade Prods., Inc.*, 2017 WL 5635027, at *8. Specifically, in the face of Plaintiff's thin copyright, the Court should apply the virtual identity standard, which is not met. But even if the Court were to apply the substantial similarity test applicable to copyrights entitled to broad protection, the First Amended Complaint still fails to plausibly allege that Defendants unlawfully appropriated any unique expression owned by Plaintiff, and therefore must be dismissed.

To apply the relevant standards to determine if Plaintiff's claim can survive a motion to dismiss, the Court must consider only the Drawings *without the Disney IP*. *See* 17 U.S.C. § 103(b) ("The copyright in a ... derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material."). To assist in the Court's analysis, the following are versions of Plaintiff's Drawings with the Disney IP—which must be filtered out for purposes of the Court's analysis—blacked out, followed by the allegedly infringing D23 Image:

**Drawing 1**



DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**Drawing 2**

**Drawing 3**



**Drawing 4**



DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**Drawing 5**



**Drawing 6**



**Drawing 7**



1

2

3

4

**Drawing 8**

5

6

7

8

9

10

11

12

13

**Drawing 9**

14

15

16

17

18

19

20

21

**Drawing 10**

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA  90017-5704
(213) 623-9300







DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**Drawing 11**



**Defendants' D23 Image**



The lack of similarity between Plaintiff's Drawings (without the Disney IP) and the D23 Image is self-evident.

> a. **Plaintiff's Copyright Claim Fails the Virtual Identity Test.**

Plaintiff's claim fails the virtual identity test. Comparing Plaintiff's Drawings covered by the Registration with the D23 Image, even without removing the Disney IP from Plaintiff's Drawings, the D23 Image is not similar at all to any of Plaintiff's

work, let alone virtually identical or substantially similar. *Compare* FAC ¶ 15, *with* FAC ¶ 23. Thus, the Court need look no further than the works included in and incorporated by reference in the First Amended Complaint to conclude that it does not sufficiently allege that Defendants copied Plaintiff's Drawings, let alone that Defendants usurped the core protectible expression required to meet the virtual identity standard. *See Milkcrate Athletics, Inc. v. Adidas Am., Inc.*, 619 F. Supp. 3d 1009, 1021 (C.D. Cal. 2022) (on motion to dismiss, finding that plaintiff's use of copyrighted design on shoes was not virtually identical where they differed in "coloring, shading, angle, accompanying words"); *see also Ets-Hokin*, 323 F.3d at 766 (holding that photographs were not virtually identical where "the lighting differs; the angles differ; the shadows and highlighting differ, as do the reflections and background" and the only similarity was the subject of the photos); *Capcom U.S.A., Inc. v. Data E. Corp.*, No. C 93-3259 WHO, 1994 WL 1751482, at *13 (N.D. Cal. Mar. 16, 1994) (finding that even though three video game characters were similar, the characters were not virtually identical).

### b. Plaintiff's Claim Fails the Substantial Similarity Test.

Even if the Court were to apply the substantial similarity test applicable to claims based on broad copyrights, which it can do at the motion to dismiss stage, Plaintiff's First Amended Complaint still does not state a plausible claim for copyright infringement. *See Woodland*, 136 F.4th at 1210–17; *Rentmeester*, 883 F.3d at 1117–23.

Plaintiff's First Amended Complaint does not pass the extrinsic test. After filtering out the Disney IP from Plaintiff's Drawings—as the Court must—little, if anything is left that also is in the D23 Image. *See supra* at pp. 15–18. At a minimum, the Court must filter out Pride Rock and "The Lion King characters" (Simba, Nala, Scar, Zazu, and lions and other animals) that are disclaimed in the Registration. *See* FAC ¶ 17; Abrutyn Decl. Exs. A, C. The Court also should not consider functional

elements, the unprotectable idea of a Lion King roller coaster, or any scènes à faire. Regardless of whether only the material that is specifically disclaimed is set aside, or whether all unprotectable elements are filtered out, after the filtering stage, nothing is left that also is in the D23 Image.

Comparing the limited protected elements in Plaintiff's Drawings to the D23 Image, the works do not carry any substantial similarities:

**Subject Matter**. Plaintiff's Drawings show the designs for a multi-tiered, dry roller coaster that routes around a building structure on the first tier, around a waterfall and through a forest scene on the second tier, and through a cave on the third tier. *See supra* at pp. 15–18. This tier-style coaster is not present in the D23 Image, which depicts a single log flume water ride originating from Pride Rock in the same manner the log flume ride emanated from Disney's Splash Mountain. *See supra* at p. 18. The D23 Image also does not depict any of the other subjects of Plaintiff's Drawings owned by Plaintiff—the cartoonish children, the costumes, the roller coaster carts or design, the signage, or the specific expression of the landscape surrounding the tiered-roller coaster (building structures, hammocks, water, trees, grass, elephant feet, rocks, lava, flames, and flowers). *Compare supra* at pp. 15–18, *with supra* at p. 18.

**Appearance and Texture**. The majority of the Drawings appear to be hand-drawn pencil etchings, with three other of the Drawings appearing to be cartoonish-graphic illustrations, and two other of the Drawings appearing to contain photographs of a sculpture and a sign. *See supra* at pp. 15–18. The D23 Image does not contain any hand-drawn pencil etchings, cartoonish illustrations, or photographs, but, rather, appears to be digitally illustrated using a sophisticated painting-style technique. *See supra* at p. 18.

**Text**. Eight of Plaintiff's Drawings contain signage or descriptive text, including in bullet-point style. *See supra* at pp. 15–18. The D23 Image does not contain any signage or text. *See supra* at p. 18.

**Selection and Arrangement of Elements**. The selection and arrangement of

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

27

protectible elements owned by Plaintiff is nowhere near similar enough to the D23 Image that "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them." *Rentmeester*, 883 F.3d at 1121. Unlike the three tiers in the Drawings—which show roller coaster tracks routing around a building structure, around a waterfall, and through a lava cave—the D23 Image shows a single log flume water ride descending down Pride Rock in the same manner as Splash Mountain, with protected characters from "The Lion King" in the foreground and atop Pride Rock. *See supra* at p. 18. If anything, the D23 Image resembles a single scene from the copyrighted 2019 "The Lion King" film. *See* Abrutyn Decl. ¶ 9, Ex. E. Defendants clearly "made choices regarding selection and arrangement that produced an image unmistakably different from [Plaintiff's Drawings] in material details." *Rentmeester*, 883 F.3d at 1122. These are "disparities that no ordinary observer of the two works would be disposed to overlook." *Id.*

Reviewing the actual works at issue, the only similarities shared by Plaintiff's Drawings and the D23 Image (other than Disney IP) are the general idea or concept of a Lion King theme park attraction, with the ride routing through Pride Rock. However, as in *Rentmeester*, Plaintiff cannot claim an exclusive right to ideas or concepts at that level of generality, especially when the idea is derived entirely from Disney IP. *See* 883 F.3d at 1123. Because the Complaint fails the extrinsic test, as a matter of law, the Court need not even reach the intrinsic test. *See Woodland*, 136 F.4th at 1210 ("[B]ecause a plaintiff must satisfy both the extrinsic and intrinsic tests, failure to meet the extrinsic test is fatal.").[8]

Accordingly, because Plaintiff's Drawings do not pass muster under the substantial similarity test, the Court must dismiss Plaintiff's copyright infringement claim.

### 3.    The First Amended Complaint Fails to Sufficiently

---

[8] The First Amended Complaint would undoubtedly fail the intrinsic test, as well—the "total concept and feel" of the two works are strikingly different. *Rentmeester*, 883 F.3d at 1118.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**Allege Copying.**

The First Amended Complaint also should be dismissed for the separate and independent reason that it does not include allegations sufficient to establish the quintessential requirement of any infringement claim: copying. "Because direct evidence that a defendant copied a plaintiff's work 'is rarely available,' a plaintiff often proves copying circumstantially by showing: (1) 'that the defendant had access to the plaintiff's work and' (2) 'that the two works share similarities probative of copying.'" *Woodland*, 136 F.4th at 1206–07 (citations omitted). "To show circumstantial evidence of 'access,' the plaintiff may generally either provide (a) 'evidence of a chain of events ... between the plaintiff's work and defendants' access to that work or' (b) 'evidence that the plaintiff's work has been widely disseminated.'" *Id.* at 1207 (citation omitted). The First Amended Complaint here does neither. Instead, it relies on a conclusory allegation—"Defendant had access" (FAC ¶ 49)— that under *Iqbal* must be discarded, *see Iqbal*, 556 U.S. at 678, and on a logical leap.

The First Amended Complaint does not allege any plausible chain of events whereby the unidentified individual responsible for creating the D23 Image had access to Plaintiff's Drawings. The First Amended Complaint identifies three individuals who are alleged to be employees of "Disney": Will Martinez (Creative Director), Dave Durham (Disney Imagineer Director)," and "Michel Den Dulk (Portfolio Creative Director for Disneyland Paris)." FAC ¶¶ 42, 45. Notably, the First Amended Complaint does not allege that any of them were responsible for creating the allegedly infringing D23 Image. The First Amended Complaint also does not allege that Plaintiff had any interaction with Durham or Dulk, that she provided either with access to her Drawings, or that her Drawings were published for widespread distribution. *See* FAC ¶¶ 42–45. Plaintiff's only purported contact was with Martinez, who mentored Plaintiff. *See* FAC ¶¶ 43–44. However, the First Amended Complaint does not specifically allege that Plaintiff provided Martinez with access to all of the registered Drawings or that Martinez was responsible for or had any involvement in

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

the creation of the D23 Image. *See* FAC ¶¶ 43–44.

Because the First Amended Complaint does not allege any concrete facts specifically linking a particular person from either of the Defendants responsible for the allegedly infringing work to Plaintiff's Drawings, the First Amended Complaint does not plausibly allege copying. *See Klauber Bros., Inc. v. City Chic Collective Ltd.*, No. 22-1743-MWF (MRWx), 2022 WL 17184799, at *5 (C.D. Cal. Aug. 26, 2022) ("The FAC not only fails to allege any concrete facts specifically linking Defendants' activities to the Lace Designs, but also fails to distinguish the individual activities of the purported wrongdoers by referring to them collectively as 'Defendants.'"); *Star Fabrics, Inc. v. Wet Seal, Inc.*, No. CV 14–07163 BRO (SHx), 2014 WL 12591271, at *4 (C.D. Cal. Dec. 2, 2014) ("Because the Complaint fails to allege any concrete facts specifically linking The Wet Seal to the protected design, Star has not adequately alleged access by a chain of events."). Accordingly, for this independent reason, the copyright infringement claim should be dismissed.

**B.    The First Amended Complaint Does Not State a Claim for Violation of the DMCA.**

The Court also must dismiss the second count in the First Amended Complaint as it does not sufficiently allege a claim for violation of the DMCA. Section 1202(b) of the DMCA contains three separate potential claims: 1202(b)(1) concerns intentional removal of CMI, 1202(b)(2) concerns distribution of CMI that has been altered or removed, and 1202(b)(3) concerns distribution or public performance of works with CMI that has been removed or altered. As a threshold matter, on the specific facts alleged here, the failure of the copyright infringement claim dooms Plaintiff's DMCA claims, which rest on the theory that the D23 Image encompasses Plaintiff's Drawings. Defendants cannot have removed or distributed CMI from Plaintiff's Drawings by publishing the D23 Image, or distributed Plaintiff's Drawings with altered or removed CMI, when Defendants did not copy or distribute Plaintiff's Drawings in the first place.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Even setting that fundamental flaw aside, the First Amended Complaint fails to identify the sub-section of 1202(b) on which Plaintiff is trying to base her claim. Thus, the First Amended Complaint fails to properly put Defendants on notice of the purported violation, as required under Fed. R. Civ. P. 8. *See Morgan v. Associated Press*, No. 15-03341-CBM-JEM, 2016 WL 6953433, at *3 (C.D. Cal. Mar. 16, 2016) (finding conclusory allegations regarding violation of Section 1202(b) insufficient under Rule 8).

Moreover, the First Amended Complaint's conclusory allegations do not pass muster to state a violation of any of the three sub-sections of 1202(b).[9] For a removal of CMI claim under either 1202(b)(1) or (b)(3), the First Amended Complaint must include allegations sufficient to show that the work used by Defendants is identical. *See O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1287 (C.D. Cal. 2022) ("[Defendants] argue that [Plaintiff's] claim fails as a matter of law because removal of CMI requires the work used by a defendant to be identical…. The Court agrees."); *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. CV 20-1931-DMG, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) ("[N]o DMCA violation exists where the works are not identical." (citing cases)). Plainly it is not here—*compare* FAC ¶ 62, *with* FAC ¶ 23—and the conclusory allegation that Defendants "reproduced identical and substantially similar designs," (FAC ¶ 63) cannot override the actual Drawings and D23 Image at issue that are reproduced in the First Amended Complaint. *See Sybersound*, 2024 WL 5284992, at *2 ("The court need not accept as true allegations that contradict matters properly subject to judicial notice or established by exhibits attached to the complaint."); *Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 2:22-cv-01463-RGK-MAA, 2022 WL 16961477, at *4 (C.D. Cal. Aug. 25, 2022) ("The differences between the parties' products undercut any inference that Defendants removed or altered Plaintiff's CMI."); *Kirk Kara*, 2020 WL 5991503, at *6.

---

[9] The First Amended Complaint does not appear to be attempting to allege a violation of Section 1202(b)(2), which requires a defendant to have distributed altered CMI. *See* 17 U.S.C. § 1202(b)(2); *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 859 (N.D. Cal. 2023). Instead, the second count focuses on "removal" of CMI. FAC ¶¶ 60–68.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

31

To state a violation of Section 1202(b)(3), as well as Section 1202(b)(2), the First Amended Complaint must plausibly allege knowledge that CMI was removed. 17 U.S.C. § 1202(b); *see Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018).[10] All three sub-sections also require knowledge that the action "will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b). As the Ninth Circuit has held, this means that "the mental state requirement in Section 1202(b) must have a more specific application than the universal possibility of encouraging infringement; specific allegations as to how identifiable infringements 'will' be affected are necessary." *Stevens*, 899 F.3d at 674. The First Amended Complaint here fails on all fronts.

Rather than pleading facts sufficient to establish the required scienter, the First Amended Complaint falls back on the types of boilerplate and conclusory allegations that do not withstand scrutiny under *Iqbal/Twombly*. *See Iqbal*, 556 U.S. at 678–81; *accord Philpot v. Alternet Media, Inc.*, No. 18-CV-04479-TSH, 2018 WL 6267876, at *5 (N.D. Cal. Nov. 30, 2018) (dismissing Section 1202(b) claim where allegations regarding mental state were conclusory). Alleging that "Defendant … distributed … derivative works … knowing that Plaintiff's name, signature and identifying information was removed" and that "Defendant knew or had reasonable grounds to know that removing or altering Plaintiff's name, signature and identifying information will induce, enable, facilitate, or conceal an infringement," FAC ¶¶ 64–65, is simply not sufficient. *See Stevens*, 899 F.3d at 674; *accord O'Neal*, 583 F. Supp. 3d at 1288 (dismissing DMCA claim where the complaint did not allege anything with respect to defendants' knowledge that removal or alteration of CMI would likely result in future infringement). As this Court previously held, "at the pleading stage, the claimant must plead facts plausibly showing that the alleged infringer had this required mental state." *Peter T. Erdelyi & Assocs. v. Optimum Seismic, Inc.*, No. 2:20-cv-11066-JVS-GJSx, 2021 WL 4775635, at *6 (C.D. Cal. July 1, 2021) (Selna, J.).

---

[10] Section 1202(b)(1) also requires the removal to have been "intentional."

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    Where, as here, a plaintiff has failed to do so, dismissal is warranted. *Id.*

2    **C.    Dismissal Should Be Without Leave to Amend.**

3        The Court should grant Defendants' Motion without leave to amend because
4    there is no possible way that Plaintiff can cure the deficiencies in the First Amended
5    Complaint—especially after she already amended her pleading once following a meet
6    a confer between counsel on the pleading's deficiencies. *See* ECF No. 20 ¶ 2; *Mills v.*
7    *Netflix, Inc.*, No. CV 19-7618-CBM-(AGRx), 2020 WL 548558, at *1 (C.D. Cal. Feb.
8    3, 2020) ("If a complaint cannot be cured by additional factual allegations, dismissal
9    without leave to amend is proper." (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
10   551 U.S. 308, 322 (2007)). Amendment will not change that Plaintiff's claims are
11   based on Drawings containing Disney IP, and that there is little resemblance between
12   the copyrightable elements of Plaintiff's Drawings (owned by Plaintiff) and the D23
13   Image. No amendment can cure her inability to satisfy either the virtual identity or
14   substantial similarity test or meet the requirements for a DMCA violation. *See Basile*
15   *v. Warner Bros. Entm't, Inc.*, No. CV 15-5243-DMG (MRWx), 2016 WL 5867432,
16   at *12–13 (C.D. Cal. Jan. 4, 2016) (granting motion to dismiss copyright infringement
17   claim without leave to amend where the court conducted the substantial similarity
18   analysis and found that the deficient pleading could not be cured by the allegation of
19   other facts), *aff'd sub nom. Basile v. Warner Bros. Ent. Inc.*, 678 F. App'x 604 (9th
20   Cir. 2017); *A'Lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*, No. CV 12-02215-RGK
21   (VBKx), 2012 WL 12921035, at *10 (C.D. Cal. Aug. 8, 2012) (granting motion to
22   dismiss Section 1202(b) claim where defect could not be cured), *aff'd in part sub nom.*
23   *A'lor Int'l Ltd. v. Tappers Fine Jewelry*, 605 F. App'x 662 (9th Cir. 2015).

24   **V.    CONCLUSION**

25       For the foregoing reasons, Defendants respectfully request that the Court grant
26   this Motion and dismiss the First Amended Complaint in its entirety without leave to
27   amend.

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Dated: August 28, 2025

Respectfully submitted,

DENTONS US LLP


By:  /s/ Joel D. Siegel
Joel D. Siegel
Stephanie S. Abrutyn (*pro hac vice*)

*Attorneys for Defendants The Walt Disney Company and Disney Enterprises, Inc.*

1

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants The Walt Disney Company and Disney Enterprises, Inc., certifies that this brief contains 6,896 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 28, 2025              */s/ Joel D. Siegel*
                                        Joel D. Siegel

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**FIRST AMENDED COMPLAINT**

Matthew Swanlund (State Bar No. 204542)
   matthew@aestheticlegal.com
**AESTHETIC LEGAL, A.P.L.C.**
400 Corporate Pointe, Suite 300
Culver City, CA 90230
Telephone: (310) 301-4545

Attorney for Plaintiff
Danielle Lawson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE LAWSON, an individual,<br><br>                Plaintiff,<br><br>v.<br><br>THE WALT DISNEY COMPANY, a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; and DOES 1-5,<br><br>                Defendants. | Case No. 8:25−cv−00889−JVS−ADS<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1.    Copyright Infringement;**<br>**2.    Removal of Copyright Management Information**<br>**3.    Demand for Jury Trial** |

## COMPLAINT

Plaintiff Danielle Lawson ("Plaintiff" or "Lawson"), by and through undersigned counsel, hereby alleges as follows against The Walt Disney Company, Disney Enterprises, Inc., and Does 1-5 (collectively, "Defendant" or "Disney"):

## INTRODUCTION

1.      This action has been filed by Plaintiff to stop Defendant's infringement of Plaintiff's registered copyright, "Pride Rock Plunge," US Copyright Reg. No. VAu001211793 (the "Plaintiff's Copyright").

2.      The Plaintiff's Copyright was registered on May 11, 2015, and is valid, subsisting, and in full force and effect.

3.      Defendant has created an unauthorized derivative work based upon Plaintiff's Copyright and continues to display, reproduce, distribute and create derivative works that infringe Plaintiff's Copyright without authorization from Plaintiff.

4.      Plaintiff delivered a demand to Defendant to cease such infringement via letter dated November 1, 2024, but Defendant rejected such demand via letter dated January 6, 2025, and has continued to refuse to cease such infringement.

5.      Plaintiff is forced to file this action to combat Defendant's infringement of the Plaintiff's Copyright.

6.      As a result of Defendant's actions, Plaintiff has been and continues to be irreparably damaged through infringement of its valuable intellectual property rights and therefore seeks injunctive and monetary relief.

7.      This Court has personal jurisdiction over Defendant, in that Defendant conducts significant business in California and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in California and in this Judicial District.

## SUBJECT MATTER JURISDICTION

8.      This Court has original subject matter jurisdiction over the copyright claim pursuant to the Copyright Laws of the United States, 17 U.S.C. § 101 et seq., 28 U.S.C. §

1338(a), and 28 U.S.C. § 1331.

## PERSONAL JURISDICTION AND VENUE

10.    This Court has personal jurisdiction over Defendant because Defendant has a continuous, systematic, and substantial presence within California, including within this Judicial District. Defendant regularly conducts business within California, including in this Judicial District.

11.    In addition, Defendant has committed acts of copyright infringement in California and in this Judicial District, including, but not limited to, a substantial part of the events or omissions giving rise to Plaintiff's claims.

12.    Defendant has displayed, reproduced and distributed unauthorized derivative works based upon the Plaintiff's Copyright in California (and more importantly, in this Judicial District).

## THE PARTIES

13.    Plaintiff is an individual permanently residing in the State of California, having a principal place of business in Los Angeles, California, in Los Angeles County.

14.    Upon information and belief, Defendant The Walt Disney Company is a Delaware corporation, having a principal address of 500 S Buena Vista St, Burbank, CA 91521; and Defendant Disney Enterprises, Inc., is a Delaware corporation, having a principal address also of 500 S Buena Vista St, Burbank, CA 91521.

## COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

### Plaintiff's Copyright

15.    Plaintiff is the sole and exclusive author of numerous original creative components all incorporated into one registered original work of art for an amusement park attraction titled "Pride Rock Plunge." Such work was registered with the US Copyright Office on May 11, 2015 (US Copyright Reg. No. VAu001211793), and includes artistic images and renderings of such components (the "Lawson Attraction"):



















16.     The Lawson Attraction is a comprehensive, visually developed and designed work of conceptual art, theme park attraction, thrill ride and themed immersive entertainment area. The Lawson Attraction is a registered collective work comprising a curated sequence of visual, narrative, spatial, and technical elements designed as an immersive artistic and entertainment experience and qualifies as a collective work expression of a jungle-themed, story-based, narrative-driven, theme park water attraction, set inside of a mountain that combines original:

a) Set designs,

b) Animatronic character action and placement;

c) Water ride layout in three tiers with three slopes;

d) Thrill ride sequence and pacing, building to a final climactic water drop;

e) Water element of attraction ride;

f) Landscape elements including exterior mountain staged in jungle and interior mountain/cavern with jungle sets and components;

g) Combination of interior and exterior ride locations;

h) Scripted sequences and story elements;

i) West African-themed character and clothing design;

j) West African-themed setting;

k) Vibrant color palette;

l) Mountain with three tiers;

m) Emotional journey shown through rhythmic color/light shifts;

n) Exterior drop as narrative & visual peak;

o) West African environment with cultural influences for food/ shop, souvenirs and character costumes;

p) Audio animatronics and special effects;

q) Lighting and spatial effects; and

r) Thematic storytelling.

These components, when integrated into a single, immersive ride experience, constitute an expressive collective whole.

17.    Plaintiff makes no claim to any Disney intellectual property, and Plaintiff intentionally excluded all Disney intellectual property from her Copyright application, specifically excluding the pre-existing material described as, "Pride Rock and characters from Disney's Lion King" (the "Disney IP").

18.    Plaintiff is the sole author of original creative elements of the Lawson Attraction that are wholly independent and unrelated to the Disney IP.

19.    Plaintiff intentionally and appropriately excluded the Disney IP from her Copyright application and has made no claim of ownership to the Disney IP.

20.    Plaintiff asserts authorship and ownership of the remainder of the Lawson Attraction other than the excluded Disney IP.

21.    The Lawson Attraction as defined herein refers only to intellectual property elements wholly created and owned by Plaintiff and expressly excludes the Disney IP. Plaintiff makes no claims of ownership of the Disney IP.

22.    Plaintiff owns all rights, including without limitation, the rights to reproduce the Lawson Attraction, to publicly display the Lawson Attraction, to prepare derivative works based upon the Lawson Attraction, and to distribute the Lawson Attraction to the public, all as the owner of Plaintiff's Copyright.

### Defendant's Infringing Activities

23.    At Defendant's recent D23 event on August 10, 2024, Defendant announced a new Lion King themed attraction to be constructed at the Disneyland Paris amusement park, and displayed, distributed and reproduced a mock-up of such new attraction for the public (the "Infringing Attraction"):



24.    Defendant continues to display the Infringing Attraction on its website: https://news.disneylandparis.com/en/disneyland-paris-will-welcome-the-worlds-first-attraction-and-immersive-themed-area-inspired-by-the-lion-king-and-reveals-that-world-of-frozen-will-open-in-2026/    and    at    https://disneyconnect.com/d23-horizons-disney-

experiences-announcements/.

25.    There are clear and distinct similarities between the Lawson Attraction and the Infringing Attraction, including but not limited to the wholly owned and original elements of the Lawson Attraction.

26.    Plaintiff has not granted or inferred upon Defendant any rights to reproduce, display, distribute, or create derivative works based upon the Lawson Attraction in any way.  Consequently, Defendant's unauthorized reproduction, display, distribution, performance and creation of derivative works in the form of the Infringing Attraction containing numerous components of the Lawson Attraction (including the protected selection, coordination, and arrangement of visual, narrative, spatial, and technical elements) constitutes intentional copyright infringement.

27.    Defendant's reproduction, display, distribution, performance and creation of derivative works of Plaintiff's protected intellectual property without permission is a violation of the Copyright Act. See 17 U.S.C. §§106 & 501.

28.    It is clear that: (i) Plaintiff owns the copyright in the Lawson Attraction; (ii) that the Lawson Attraction is registered with the US Copyright Office; (iii) that Defendant created unauthorized derivative works of the Lawson Attraction; (iv) that Defendant currently displays unauthorized derivative works of the Lawson Attraction; and (v) that Defendant publicly distributes unauthorized derivative works of the Lawson Attraction without authorization. Defendant's conduct violates the Copyright Act.

29.    On information and belief, Defendant generally retains full ownership of its intellectual property, including theme park attractions. The creative talents involved, such as Defendant's Imagineers, designers, and writers, are usually compensated through their salaries or project-based contracts rather than through royalties.

30.    On information and belief, however, there are exceptions in cases where Defendant collaborates with external creators or licenses third-party intellectual property (e.g., with movie studios or authors). In those scenarios, the original creators or rights holders might receive royalties based on licensing agreements. These individuals might be

referred to as "creative consultants," "licensing partners," or simply "rights holders."

31.    On information and belief, for internal Defendant talent, such as Imagineers, their contributions are part of their employment, but might include titles such as "Creative Director," "Senior Imagineer," "Show Producer," or "Attraction Designer." Their recognition often comes through awards, credits, and promotions within the company rather than through ongoing residuals.

32.    Plaintiff informed Defendant on November 1, 2024, of such infringement, and offered in good faith an amicable resolution that may involve potential working opportunities whereby Defendant could benefit from Plaintiff's skills and unique perspective and Plaintiff could be compensated accordingly for her valuable design work. Plaintiff welcomed a conversation about how such a relationship would work.

33.    Defendant responded to Plaintiff on January 6, 2025, rejecting Plaintiff's claims and refusing to discuss any resolution that would involve a working relationship between Plaintiff and Defendant.

34.    Despite Plaintiff's demand letter, as of the date of this Complaint filing, the Infringing Attraction is still being reproduced, displayed and distributed by Defendant, more than five (5) months after the demand letter was sent.

35.    Defendant has reproduced, displayed, and distributed derivative works in the form of the Infringing Attraction in California, including in this Judicial District.

36.    Defendant has directly profited from the reproduction, display and distribution of derivative works in the form of the Infringing Attraction. Defendant has a direct financial interest in the reproduction, display and distribution of derivative works in the form of the Infringing Attraction.

37.    Defendant is not in any way affiliated with Plaintiff. At no time has Plaintiff ever granted Defendant any license, permission, or authority to use or display, reproduce, distribute or market the Lawson Attraction or create derivative works based upon the Lawson Attraction or the Plaintiff's Copyright.

38.    Upon information and belief, Defendant knew of the Plaintiff's Copyright and

Plaintiff's rights therein when Defendant began marketing, advertising, promoting and distributing the Infringing Attraction.

39.    Defendant's acts complained of herein have been willful and deliberate. Defendant has intentionally attempted to capitalize on the Lawson Attraction without compensation or credit to Plaintiff.

40.    Defendant's acts complained of herein have caused damage to Plaintiff in an amount to be determined at trial, and such damages will continue to increase unless Defendant is enjoined from its wrongful acts and infringement.

41.    Defendant's acts complained of herein have caused Plaintiff to suffer irreparable injury to its business.

### History of Engagement Between Plaintiff and Defendant

42.    The similarities between the Lawson Attraction and the Infringing Attraction are more concerning due to the established history of engagement between Plaintiff and Defendant's representatives, specifically regarding the Lawson Attraction. The Lawson Attraction was not created by Plaintiff on speculation, but rather with the express knowledge of Defendant's executives, including but not limited to Will Martinez (Creative Director), and Dave Durham (Disney Imagineer Director) on the Disney Imagineering campus in Glendale, California.

43.    During Plaintiff's college career, she began developing the Lawson Attraction and expressed a desire to explore becoming a Disney Imagineer to her professor, David Nicksay. In 2014, Mr. Nicksay introduced Plaintiff to Will Martinez (Creative Director) at Disney. Mr. Martinez served as Plaintiff's mentor for approximately five (5) years from 2014 until 2019, and provided encouragement, assurances and expectations that Plaintiff would have the ability to develop and present the Lawson Attraction to Disney executives as an entry to potential employment opportunities with Disney as an Imagineer.

44.    Plaintiff and Mr. Martinez communicated as recently as September 12, 2019, about potentially applying for an Imagineer position with Disney. Plaintiff had no further interaction with Mr. Martinez after September 12, 2019.

45.    The recent D23 announcement is where Plaintiff discovered the Infringing Attraction's similarities to the Lawson Attraction. Plaintiff also noticed that Michel Den Dulk (Portfolio Creative Director for Disneyland Paris) appears to be employed in the same Disney Imagineering office in Glendale, California as Mr. Martinez.

## FIRST CAUSE OF ACTION

## COPYRIGHT INFRINGEMENT

### (17 U.S.C. §§ 101 *et seq.*)

46.    Plaintiff hereby repeats, realleges, and incorporates by reference Paragraphs 1 – 45 of this Complaint as though fully set forth herein.

47.    Plaintiff owns all exclusive rights, including without limitation the rights to reproduce the Lawson Attraction in copies; to prepare derivative works based upon the Lawson Attraction; to distribute copies of the Lawson Attraction to the public; and to publicly display the Lawson Attraction, including without limitation copyrights covered by the Plaintiff's Copyright.

48.    Defendant has displayed, distributed, reproduced, and created derivative works based upon the Lawson Attraction without Plaintiff's permission, and has not ceased such activities in connection with the Plaintiff's Copyright.

49.    Defendant had access to the Lawson Attraction before Defendant created the Infringing Attraction.

50.    Upon information and belief, Defendant has intentionally copied Plaintiff's Copyright for the Lawson Attraction. Alternatively, Defendant's representations of the Infringing Attraction are strikingly similar, or at the very least substantially similar, to Plaintiff's Copyright for the Lawson Attraction and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's Copyright for the Lawson Attraction.

51.    On information and belief, Defendant's infringing acts were willful, deliberate, and committed with prior notice and knowledge of Plaintiff's Copyright. Defendant willfully, wantonly, and in conscious disregard and intentional indifference to

the rights of Plaintiff made and distributed in the United States, including this District, caused to be made and distributed in the United States, including this District, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of infringing materials.

52.     Defendant either knew, or should have reasonably known, that the Lawson Attraction was protected by copyright and their representations infringed on Plaintiff's Copyright. Defendant continues to infringe upon Plaintiff's rights in and to the copyrighted works.

53.     As a direct and proximate result of their wrongful conduct, Defendant has realized and continues to realize profits and other benefits rightfully belonging to Plaintiff. Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. § 504.

54.     In addition to Plaintiff's actual damages, Plaintiff is entitled to receive the profits made by Defendant from their wrongful acts, pursuant to 17 U.S.C. § 504(b). Defendant should be required to account for all gains, profits, and advantages derived by Defendant from their acts of infringement.

55.     In the alternative, Plaintiff is entitled to, and may elect to choose, statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of Defendant's willful copyright infringement.

56.     Plaintiff is entitled to, and may elect to choose, injunctive relief under 17 U.S.C. § 502 enjoining any use or exploitation by Defendant of their infringing work and for an order under 17 U.S.C. § 503 that the Infringing Attraction be impounded and destroyed.

57.     Plaintiff seeks and is also entitled to recover attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

58.     Plaintiff has no adequate remedy at law, and, if Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to the Plaintiff's Copyright.

## SECOND CAUSE OF ACTION

## REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION

**(17 U.S.C. §1203(c)(3))**

59.    Plaintiff hereby repeats, realleges, and incorporates by reference Paragraphs 1 – 58 of this Complaint as though fully set forth herein.

60.    This is an action for removal of copyright management information under the Copyright Act, 17 U.S.C. §§ 1202, et seq.

61.    Plaintiff is the owner of valid and enforceable copyrights in the Lawson Attraction, which contain copyrightable subject matter under 17 U.S.C. §§ 101, et seq.

62.    Plaintiff's deposit materials submitted to the US Copyright Office with her application for copyright registration included certain images containing the name, signature and identifying information of Plaintiff, including but not limited to the following images:

 



63.    Without permission from Plaintiff, Defendant distributed, displayed, and reproduced identical and substantially similar designs bearing protected elements of the Lawson Attraction, and created derivative works based upon the Lawson Attraction.

64.     Defendant, without the authority of Plaintiff or the law, copied, distributed and publicly displayed derivative works based upon the Lawson Attraction, knowing that Plaintiff's name, signature and identifying information was removed or altered without authority of Plaintiff or the law.

65.     Defendant knew or had reasonable grounds to know that removing or altering Plaintiff's name, signature and identifying information will induce, enable, facilitate, or conceal an infringement of Plaintiff's rights.

66.     Defendant's removal or alteration of Plaintiff's name, signature and identifying information from derivative works based upon the Lawson Attraction is a violation of 17 U.S.C. § 1202(b).

67.     Defendant, by its actions, has damaged Plaintiff in an amount to be determined at trial.

68.     Defendant, by its actions, have irreparably injured Plaintiff. Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.     That the Court render a final judgment in favor of Plaintiff and against Defendant on all claims for relief alleged herein;

2.     That the Court render a final judgment that Defendant has violated 17 U.S.C. § 101(a) by directly, contributorily, and/or vicariously infringing the Plaintiff's Copyright (Reg. No. VAu001211793);

3.     That Defendant, its agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with Defendant who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

a.  using any of the Plaintiff's Copyright, in connection with Defendant's

products or services, using the Plaintiff's Copyright in advertising or promoting Defendant's products or services, and/or using confusingly similar variations of Plaintiff's Copyright in any manner;

b. distributing, reproducing, displaying, advertising, marketing, or promoting any products or services protected by Plaintiff's Copyright;

c. without permission or authorization from Plaintiff, copying, reproducing, distributing, displaying, creating derivative works of the Plaintiff's Copyright;

d. filing any applications for registration of any copyrighted works, or designs substantially similar to the Plaintiff's Copyright; and

e. otherwise infringing the Plaintiff's Copyright.

4.    That Defendant be required to account to Plaintiff for any and all profits derived by Defendant and all damages sustained by Plaintiff by virtue of Defendant's acts complained of herein;

5.    That Defendant be ordered to pay over to Plaintiff all damages which Plaintiff has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

6.    That Plaintiff be awarded its damages and Defendant's profits under 17 U.S.C. § 504, as well as enhanced damages pursuant to 17 U.S.C. § 504. Alternatively, if Plaintiff elects, that Plaintiff be awarded statutory damages pursuant to 17 U.S.C. § 504;

7.    That Defendant's actions be deemed willful;

8.    That an award of reasonable costs, expenses, and attorneys' fees be awarded to Plaintiff pursuant to at least 17 U.S.C § 505;

9.    That Plaintiff be awarded damages for Defendant's violation of 17 U.S.C. §1203(c)(3);

10.    That Defendant be required to deliver and destroy all devices, literature, advertising, goods and other unauthorized materials bearing the Plaintiff's Copyright, pursuant to 17 U.S.C. § 503; and

11.    That Plaintiff be awarded such other and further relief as this Court may deem just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
**AESTHETIC LEGAL, A.P.L.C.**

Dated: August 7, 2025          By:   /s/ Matthew Swanlund

Matthew Swanlund
400 Corporate Pointe, Suite 300
Culver City, CA 90230
Telephone: 310.301.4545

Attorney for Plaintiff
DANIELLE LAWSON