Matthew Swanlund (CSB No. 204542)
  matthew@aestheticlegal.com
**AESTHETIC LEGAL, A.P.L.C.**
400 Corporate Pointe, Suite 300
Culver City, CA 90230
Telephone: (310) 301-4545

*Attorney for Plaintiff*
*DANIELLE LAWSON*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE LAWSON, an individual;<br><br>Plaintiff,<br><br>v.<br><br>THE WALT DISNEY COMPANY, a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; and DOES 1 through 5, inclusive;<br><br>Defendants, | Case No. 8:25-cv-00889-JVS-ADS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. James V. Selna<br>Date: September 29, 2025<br>Time: 1:30 p.m.<br>Courtroom: 10C<br>Date Action Filed: April 30, 2025 |

Plaintiff DANIELLE LAWSON ("Plaintiff") respectfully submits this Opposition to THE WALT DISNEY COMPANY ("WDC") and DISNEY ENTERPRISES, INC.'s ("DEI") (both collectively "Disney" or "Defendants") Motion to Dismiss the First Amended Complaint ("Motion") (ECF No. 26) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Motion should be denied in its entirety. Alternatively, if the Court finds any deficiencies, Plaintiff requests leave to amend.

## I. INTRODUCTION

Disney's Motion to Dismiss the First Amended Complaint ("FAC") seeks to prematurely extinguish Plaintiff's rightful claims by misapplying Ninth Circuit copyright law and sidestepping critical

1
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 8:25-cv-00889-JVS-ADS

authority that undermines their position. While Disney heavily relies on *Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018), to assert a "thin" copyright protection and a stringent "virtual identity" standard, they conspicuously omit *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc), which clarified access, the extrinsic/intrinsic test, and emphasized that substantial similarity inquiries are inherently *factual*, often reserved for the jury rather than being dismissed in the pleadings. This selective citation underscores the motion's flaws: it ignores governing authority that supports the FAC's plausible allegations and the need for discovery.

Moreover, Disney's characterization of Plaintiff's filing of this suit and good faith settlement discussions as an attempt to "force" a job opportunity (Motion, page 8, line 23 through page 9, line 2, citing FAC ¶32) is a gross mischaracterization. The FAC suggests no such intent, and years-long lapses after creation and presentation of her work to Disney employees, and communications with her former Imagineer mentor, belies any notion of a "forcing move" to leverage employment.

As alleged, in 2015 Plaintiff created a series of original design concept images for a unique theme park attraction (the "Lawson Attraction"), registered with the United States Copyright Office (Reg. No. VAu001211793). The presumption of validity, and ownership, from the registration further shifts the burden to Disney, who cannot rebut it on the pleadings alone. *See* 17 U.S.C. § 410(c); *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257-58 (9th Cir. 2011). Plaintiff's artistic vision, adding numerous elements of protectable expression beyond disclaimed elements, warrants standard protection under 17 U.S.C. § 103(b). Such original creative elements are set forth in detail on page 6 of the FAC.

Disney's 2024 D23 promotional image for a Disneyland Paris Lion King attraction ("D23 Image") substantially copies these elements, and the FAC plausibly alleges access through public online sharing and contemporaneous communications with Disney personnel. See FAC ¶¶ 42-45. Under *Skidmore*'s substantial similarity test, the works share sufficient protectable features to survive dismissal, with inferences drawn in Plaintiff's favor. The DMCA claim similarly holds, as the FAC asserts that Disney knowingly stripped Plaintiff's copyright management information ("CMI") from the derived D23 Image.

By framing Plaintiff's work as an infringing "misuse" of its Lion King IP and attempting to dominate the pleadings with dozens of irrelevant registrations, Disney overlooks the well-established principle that fan creations, like the Lawson Attraction, are protectable when original. The FAC's allegations establish plausible claims that demand discovery, not dismissal. Should the Court identify any deficiencies, they are readily curable through amendment, and leave should be granted to ensure justice. Fed. R. Civ. P. 15(a)(2); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## II. FACTUAL BACKGROUND

The following factual background is drawn from the well-pled allegations in the FAC (ECF No. 25) and attached exhibits, which must be accepted as true for purposes of this motion. *Ashcoft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Disney's contrary characterizations (*see, e.g.*, Motion at 8–9) raise factual disputes for later resolution.

### A. Plaintiff's Original Drawings

In 2015, Plaintiff, then a student, created the Lawson Attraction, including but not limited to a series of eleven original drawings collectively registered with the United States Copyright Office under Registration No.VAu001211793. See FAC ¶¶13–17, Ex. A (Registration Certificate). The drawings depict a conceptual Lion King-themed park attraction and ride titled "Pride Rock Plunge," featuring original and protectable elements such as multi-tiered track layouts weaving around, through, and down a mountain, dynamic character placements with special effects, thematic sequencing through savanna, waterfall, and cave environments, and unique artistic perspectives with color schemes evoking the hero's journey from youthful adventure to triumph through adversity, amplified by the ride's physical thrill. *Id.* ¶¶15–16.

While properly disclaiming preexisting Disney intellectual property, the Lawson Attraction adds substantial original expression through creative integration into a cohesive theme park attraction thrill ride. *Id.* ¶¶17-18, Ex. A (limiting scope of registration to new material). The Copyright Office's issuance of the registration on May 15, 2015, constitutes *prima facie* evidence of creativity and ownership.

Contrary to Disney's "unauthorized" label (Motion at 8), Plaintiff created the Lawson Attraction with the express knowledge of Disney employees, including her mentor of five years, Will Martinez (Creative Director), and Dave Durham (Imagineer Director). *Id*. ¶42. These communications, accessible to at least Mr. Martinez and Mr. Durham, as well as to further unknown members of Disney's Imagineering team, provided reasonable access to her work. *Id.* Plaintiff last had contact with Mr. Martinez in 2019. *Id*. ¶44.

### B. Disney's Infringing Image and Attraction

On August 10, 2024, during the D23: The Ultimate Disney Fan Event, Disney released the D23 Image, a promotional rendering of a planned Lion King-themed attraction for Disneyland Paris. FAC ¶¶23–24, Ex. B (D23 Image). The image depicts a log flume ride incorporated into Pride Rock, with a toboggan descending a waterfall from a cave atop the rock, featuring character placements suggestive of sequential scenes. *Id.*

The D23 Image substantially copies protectable elements of the Lawson Attraction, including but not limited to the ride's mountain integration, the inclusion and placement of the water feature, and narrative sequencing. *Id.* Indeed, the D23 Image only includes superficial changes, namely adapting the Lawson Attraction's track ride with water element into a log flume with water element, ostensibly influenced by consumer demand for water attractions and Disney's simultaneous push to re-theme its popular *Song of the South*-styled attractions. Without permission, Disney reproduced Plaintiff's original expression without credit, and removed her CMI in an apparent attempt to conceal the source and facilitate infringement. *Id.* ¶¶60–68. When Plaintiff sought credit, Disney stonewalled, forcing this suit.

## III.   LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), dismissal of a complaint is "appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Meniondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008). Allegations of material fact in the complaint are "read in the light most favorable to the non-moving party," which, "together with all reasonable inferences therefrom," the Court takes to be true. *Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir. 1998); *accord Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

However, a plaintiff is not required "to set out in detail the facts upon which he bases his claim." *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790, 794 (Fed. Cir. 2000), *quoting Conley v. Gibson,* 355 U.S. 41, 47-48 (1957). Instead, the complaint "need only plead facts sufficient to place the alleged infringer on notice." *Id.; see also Twombly,* 550 U.S. at 556 ("[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of these facts is improbable, and that a recovery is very remote and unlikely.")

## IV.   ARGUMENT

### A.   Plaintiff Properly Pled Copyright Infringement

To state a claim for copyright infringement, Plaintiff must allege: (1) that she owns a valid copyright in the Lawson Attraction; and (2) that Disney copied protected aspects of the work. *Alfred v. Walt Disney Co.*, 821 Fed. Appx. 727, 728 (9th Cir. 2020) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). A copyright registration is prima facie evidence of the copyright's validity,

and the facts set forth in the certificate. *See* 17 U.S.C. § 410(c); *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011).

The second prong of the analysis "requires that Plaintiffs demonstrate that there are, in short, substantial similarities between the two works." *Alfred*, 821 Fed. Appx. at 728 (citing *Skidmore*, 952 F.3d at 1064)). Because direct evidence of copying is rare, the plaintiff "can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Skidmore*, 952 F.3d at 1064 (citing *Rentmeester*, 883 F.3d at 1117).

At the pleading stage, the determination of similarity made by applying only an "extrinsic test." *Alfred*, 821 Fed. Appx. at 728. The extrinsic test requires the court to first distinguish between protectible and unprotectible elements, and then "ask only whether the protectible elements in two works are substantially similar." *Id.* (quoting *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 349 (9th Cir. 2012), *abrogated on other gounds by Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194 (9th Cir. 2020). "Even where individual elements are not protected—their 'original selection, coordination, and arrangement . . . may be protectible expression.'" *Id.* Dismissal is only appropriate where "no reasonable jury could find that the works are substantially similar using the objective criteria of the extrinsic test." *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).

### 1. *Plaintiff's Copyright Is Valid and Not "Thin"*

Disney's argument that Plaintiff's copyright is "thin" because her Drawings are "dominated by Disney IP" (Motion at 18) misconstrues the law and ignores the FAC's well-pled allegations of originality. The Copyright Office's issuance of Registration No. VAu001211793 (FAC ¶15, Ex. A) establishes a presumption of validity, including originality, which Disney bears the burden to rebut—a task they cannot accomplish on the pleadings without evidence. *See* 17 U.S.C. § 410(c); *United Fabrics Int'l*, 630 F.3d at 1257 (presumption shifts burden to challenger). Copyright protection is thin where there is only a narrow range of expression available. However, where "there are gazillions of ways" to create a work, copyright protection is broad. *Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 391 F. Supp. 3d 959, 967 (N.D. Cal. 2019); *Rentmeester*, 883 F.3d 1111 ("As with any other work, the greater the range of creative choices that may be made, the broader the level of protection that will be afforded to the resulting image."). Disney's attempt to undermine this by listing Disney elements in the Lawson Attraction (Motion at 18) overlooks the registration's explicit disclaimer of those elements, limiting protection to Plaintiff's new contributions—such as the multi-tiered track ride layout, water element, narrative sequencing, and immersive perspectives (FAC ¶¶ 16–17).

Far from "pervading the work" as Disney claims, the Lawson attraction adds at least the requisite "minimal creativity" for broad protection. Her unique conceptualization includes a thrill ride weaving through savanna, waterfall, mountain, and cave environments, with color schemes evoking emotional progression. This creative expression exceeds the "thin" protection afforded to works with limited originality, like simple logos or stock product photos, where expression is "meager." *Milkcrate Athletics Inc. v. Adidas Am., Inc.*, 2022 WL 18284401, at *5 (C.D. Cal. Nov. 9, 2022) (cited Motion at 19, discussing a minimalist logo comprising a record and a milkcrate); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) (cited Motion at 19, discussing stock photos of vodka bottles). Unlike *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) (cited Motion at 19), where jellyfish sculptures were thin due to *scènes à faire* from nature, Plaintiff's illustrative, narrative and structural choices are not "standard, stock, or common" to theme park attraction designs—they are her original expression. Lawson made numerous, extensive, substantive, original creative decisions in her creation of the Lawson Attraction, and appropriately excluded all Disney IP from her claims of ownership.

Disney claims that the Lawson Attraction's components are "merely functional design components" misapplies copyright law. (Motion at 19, citing 17 U.S.C. § 102(b); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992)). The Supreme Court's decision in *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405 (2017), clarifies that pictorial or graphic features in a useful article are protectable if they can be perceived as a two- or three-dimensional work of art separate from the article's utilitarian function and would qualify as a protectable work if imagined independently. *Id.* at 417-18. Plaintiff's work depicts an artistic theme park attraction concept and layout—tiered tracks and environmental integration—that are and can be envisioned as standalone graphic art (e.g., a conceptual illustration), distinct from any ride utility, rendering the design's expressive elements protectable despite their functional inspiration.

Indeed, the Lawson Attraction's protectable elements, including the tiered tracks, scenery, character development, and narrative flow, could be adapted to a generic African safari adventure ride, underscoring their independence from Disney IP and reinforcing originality. As there are undoubtedly "gazillions of ways" to create such an amusement park attraction, the Lawson Attraction is entitled to broad protection.

### 2.  The FAC Properly Alleges "Access"

Disney further disputes that the FAC adequately alleges access to the Lawson Attraction, but they ignore controlling precedent that demonstrates the sufficiency of Plaintiff's allegation of access. At the

pleading stage, "[t]o satisfy [the] burden of pleading access, plaintiff must allege facts 'from which a reasonable finder of fact could infer that the defendant had a reasonable opportunity to copy his or her work.'" *Shame on You Prods. v. Banks*, 120 F.Supp.3d 1123, 1149 (C.D. Cal. 2015) (citation omitted); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (the question is "whether reasonable minds could find that Defendants had a reasonable opportunity to have heard Plaintiff's song before they created their own song.") (citation omitted). Notably, the Ninth Circuit recently suggested that despite abrogating the inverse ratio rule, access can still "serve as circumstantial evidence of actual copying." *Skidmore*, 952 F.3d at 1069. Disney dismisses the FAC's allegations as lacking a "plausible chain" to the D23 Image's creator, but this misstates the low bar for pleadings: circumstantial evidence of opportunity suffices, and the FAC meets it through public dissemination and direct mentorship ties to Disney's creative team. Disney makes no denials or objections to Plaintiff's claim that Mr. Martinez, Mr. Durham or Michel Den Dulk are employed by Disney.

The FAC alleges sufficient facts to meet the "reasonable finder of fact" standard. Plaintiff set forth her initial connection to Disney through Mr. Martinez (FAC ¶ 43), the development of the Lawson Attraction (FAC ¶ 43), discussions about the Lawson Attraction with Mr. Martinez and Mr. Durham (¶ 42), and the allegation, on information and belief that Michel Den Dulk, Portfolio Creative Director for Disneyland Paris, works in the same office where Plaintiff shared her work with Mr. Martinez and Mr. Durham (FAC ¶ 45). Considered together, these allegations create a plausible chain, and amount to more than a "reasonable opportunity" to access the Lawson Attraction. The direct chain alleged implies internal dissemination to the D23 Image creator.

Disney's insistence on a "specific" link to the "unidentified individual" responsible for the D23 Image (Motion at 28) elevates the standard beyond plausibility. No such precision is required pre-discovery, and corporate access via one relevant employee (e.g., Martinez) attributes to the entity. *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016). The FAC's facts—public sharing plus mentorship—nudge access "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570 (2007), especially when paired with substantial similarities that a reasonable fact-finder could view as probative of copying. *Three Boys*, 212 F.3d at 485 (probative similarities bolster circumstantial access). Disney's "speculative" label ignores these inferences, which *Iqbal* mandates in Plaintiff's favor. 556 U.S. at 678.

Lastly, the 9-year gap between creation of the Lawson Attraction (2015) and the D23 Image (2024) does not defeat plausibility; archived works in talent pipelines often resurface, and Plaintiff's last contact

with Martinez in 2019 (FAC ¶ 44) aligns with Disney's Paris project timeline. The FAC thus adequately alleges copying, surviving dismissal.

### 3. *The Extrinsic Test Shows Substantial Similarity in Protectable Elements*

Disney's assertion that Plaintiff's copyright infringement claim fails the extrinsic test as a matter of law (Motion at 2, 20-26) rests on a bold misapplication of Ninth Circuit law and a narrow view of the protectable elements in the Lawson Attraction. The Ninth Circuit's extrinsic test objectively compares specific expressive elements after filtering unprotectable ones, to avoid prematurely resolving factual disputes better suited for the jury. *Skidmore*, 952 F.3d at 1064. Unprotectable elements can include ideas, facts, functional aspects, and *scènes à faire*. *Corbello v. Valli*, 974 F.3d 965, 974 (9th Cir. 2020). Certain works, like photographs, cannot be easily broken down into protectable and unprotectable components, in which case the Ninth Circuit employs a "selection and arrangement" approach that looks to "the particular way in which the artistic elements form a coherent pattern, synthesis, or design." *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 942 (9th Cir. 2023). Moreover, while substantial similarity does not necessarily require expert testimony, dismissal may be disfavored if additional evidence would "help inform the question of substantial similarity." *Alfred*, 821 Fed. Appx. at 729.

Disney's filtering argument (Motion at 20) assumes the Lawson Attraction is so "dominated" by Disney IP that no protectable residue remains, but this ignores (1) the presumption of validity; (2) the registration's disclaimer; and (3) the FAC's extensive allegations of original contributions. (FAC ¶¶ 15-17, Ex. A). Here, the FAC plausibly alleges extrinsic similarity between protectable elements of the Lawson Attraction—such as the innovative multi-tiered track layout weaving around and through a mountain, the narrative sequencing through savanna, mountain, waterfall, and cave environments, and the integration of character placements with special effects to evoke an emotional hero's journey (FAC ¶¶ 15-17, Ex. A)—and the D23 Image's mirroring of these features (FAC ¶¶ 23-27, 47-58, Ex. B).

The extrinsic test's objective dissection—focusing on "plot, themes, mood, setting, pace, characters, and sequence of events" (*Skidmore*, 952 F.3d at 1064 (quoting *Bourne Co. v. Dr. Seuss Enters., L.P.*, 581 F.3d 951, 963 (9th Cir. 2009)))—confirms similarity here, as the D23 Image's structure and flow align with the Lawson Attraction's design. Disney has publicly released only limited imagery. Therefore, discovery will likely uncover certain evidence that will be directly applicable to the claims in the FAC. Disney's claim of "many differences" between the works (Motion at 2, 26) raise factual issues

for the jury, not dismissal. *Skidmore* mandates this restraint, abrogating inverse ratio but preserving the test's factual core. 952 F.3d at 1064-65.

### a) Even Under the Virtual Identity Standard, the Works Are Sufficiently Alike

Even if thin protection mandates "virtual identity" (Motion at 2, 25, citing *Rentmeester*, 883 F.3d at 1118), the FAC's exhibits show the D23 Image's expressive elements are sufficiently alike to Plaintiff's protectable contributions. Virtual identity requires near-exact replication of meager expression, as in *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) (Motion at 19). But the Lawson Attraction's original layout—tiered descent from a mountain with sequenced environments (FAC ¶ 15, Ex. A)—is not meager. And the D23 Image's flume mirrors it closely: cave-top drop, waterfall integration, and narrative pacing (FAC ¶¶ 47-50, Ex. B). This goes beyond *de minimis*, creating a jury question. *Rentmeester*, 883 F.3d at 1120 (close but not identical poses insufficient; here, structural likeness is closer). At pleadings, the FAC's plausible match precludes dismissal. *Skidmore*, 952 F.3d at 1064 (factual).

### b) Even Under the Virtual Identity Standard, the Works Are Sufficiently Alike

The extrinsic test objectively confirms similarity after filtering, but Disney's analysis (Motion at 20-26) over-filters by conflating disclaimed IP with protectable components, leaving nothing for comparison. The test dissects "specific expressive elements" like sequence and arrangement (Skidmore, 952 F.3d at 1064). Filtering excludes ideas/*scènes à faire* (*Corbello*, 974 F.3d at 974; Motion at 19), but Plaintiff's tiered tracks, emotional sequencing, and perspectives remain protectable as creative synthesis (*Hanagami*, 85 F.4th at 942). The D23 Image's Pride Rock-integrated flume, with its plunge and character-driven flow, articulates these matches (FAC ¶¶ 47-58). This is not "stock" (Satava, 323 F.3d at 810; Motion at 19), but original design.

### B.     The DMCA Claim Survives Dismissal

Defendants argue the FAC fails to state a DMCA claim under 17 U.S.C. § 1202(b) because they "did not copy or distribute Plaintiff's work" and the D23 Image is not "identical" (Motion at 3, 30). This ignores the FAC's plausible allegations of CMI removal from a substantially similar derived image, with scienter inferred at pleadings. Section 1202(b)(1) prohibits intentional CMI removal knowing it will induce, enable, facilitate, or conceal infringement, and (b)(3) bars distribution knowing CMI was removed. The FAC alleges Defendants stripped Plaintiff's signatures and metadata from the D23 Image,

a work deriving from her Drawings through substantial similarity in layout and sequencing (FAC ¶¶ 60-68, Ex. B).

Scienter is plausibly pled: Defendants' access to Plaintiff's work (FAC ¶¶ 42-45) supports knowledge of CMI, and their distribution without attribution infers intent to conceal and perpetuate infringement. *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) (Motion at 5, 25-26) (intent from contextual inferences at pleadings; requires showing actions "will induce... or conceal" infringement). The FAC's allegations of non-credit despite opportunity raise the claim to plausibility. *Iqbal*, 556 U.S. at 678. The claim is well-pled.

## V. OBJECTION TO JUDICIAL NOTICE REQUESTS

Based on the preceding, Defendant's Motion should be denied. If the Court is inclined to grant Defendant's Motion regarding any of the causes of action, Plaintiff respectfully requests that the Court grant Plaintiff leave to amend. *See* Fed. R. Civ. P. 15(a); *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003) (leave to amend "shall be freely given when justice so requires" and granted "with extreme liberality"); *see also, Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986).

## VI. CONCLUSION

Based on the preceding, Defendant's Motion should be denied in full. If the Court is inclined to grant Defendant's Motion regarding any cause of action, Plaintiff respectfully requests that the Court grant Plaintiff leave to amend. *See* Fed. R. Civ. P. 15(a); *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003) (leave to amend "shall be freely given when justice so requires" and granted "with extreme liberality"); *see also, Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986).

Dated: September 8, 2025

Respectfully Submitted,
**AESTHETIC LEGAL APLC**

/s/ Matthew Swanlund
Matthew Swanlund, Esq.
400 Corporate Pointe, Suite 300
Culver City, CA 90230
Telephone: (310) 301-4545

Attorney for Plaintiff
DANIELLE LAWSON